IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH BREN and CAROLYN BREN | : | No. 4:05-cv-2404 |
| Plaintiffs, | : | Judge John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM

January 4 , 2008

This is a declaratory judgment action in which Plaintiffs Joseph and Carolyn Brens ("the Brens") seek reformation of the limits of underinsured motorist ("UIM") coverage provided by an automobile insurance policy issued to by Defendant Nationwide Mutual Insurance Company ("Nationwide").  Pending before the Court is Nationwide's motion for summary judgment.  For the reasons set forth below, the Court will grant Nationwide's motion.

## I.    BACKGROUND

In accordance with the standard of review governing motions for summary judgment, the following undisputed facts, and any reasonable inference derived therefrom, are viewed in the light most favorable to the non-moving parties, the Brens.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

Nationwide issued automobile insurance policy number 58 37 C 664126 to the Brens on February 6, 2004 with a policy period of March 2, 2004 to September 2, 2004. (Def. Motion for Summary Judgment ["Def."] Ex. G.)[1] The named insureds are Joseph and Carolyn Bren. (*Id.*) The policy provides, *inter alia*, $100,000 per person and $300,000 per occurrence in bodily injury liability coverage. (*Id.*) The declarations page also indicates that the policy provides $25,000 per person and $50,000 per occurrence in stacked UIM coverage. (*Id.*) The Brens paid the monthly premiums for the policy. (Statement of Material Facts ["SMF"] ¶ 4(1).)

On August 18, 2004, Joseph Bren was involved in a motor vehicle accident in which he sustained severe bodily injury. (SMF ¶ 4(2).) Nationwide consented to the Brens' settlement with the tortfeasor for the $30,000 total limits of two insurance policies. (Compl. Ex. B-D.) The Brens then presented an UIM claim to Nationwide. (SMF ¶ 6.) Nationwide paid $50,000 in UIM coverage, which it maintains is the limit of UIM coverage provided by the Brens' policy. (SMF ¶ 7.)

---

[1] The policy issued by Nationwide was a six month term policy, which the Brens renewed several times. In addition to the policy issued on February 6, 2004, the parties also refer to a renewal of the policy issued on August 9, 2004 with a policy period of September 2, 2004 to March 2, 2005. (*See* Compl. Ex. A; Def. Ex. A.) The coverage provided by both policies is identical. (*Compare* Def. Ex. A and Ex. G.) However, because the occurrence at issue happened before the policy period of the renewal policy and because the UIM coverage authorization form at issue was signed before the prior policy was issued, the Court will consider the policy issued on February 6, 2004 as the policy responding to the occurrence.

In this suit, the Brens allege that the proper limit of UIM coverage must be reformed to match the limit of liability coverage, and is therefore $100,000 per person stacked for two vehicles, totaling $200,000. The Brens argue that this reformation is necessary because the UIM coverage authorization form, which Nationwide claims establishes the lower limit, is invalid and unenforceable.

The UIM coverage authorization form at issue was signed by Joseph Bren on June 28, 2003. (SMF ¶ 3.) The form, as completed by Joseph Bren, provides:

---

**UNDERINSURED MOTORIST COVERAGE AUTHORIZATION FORM**          UIM 2

Please issue my policy with Underinsured Motorist Coverage limits of: (Cannot exceed your Liability Coverage Limits or be less than Financial Responsibility Limits.)  Do not complete this form if your UIM limits match your limits of Bodily Injury Liability.

Bodily Injury
Per person/per occurrence

| | | |
|---|---|---|
| ___ | $15,000/$30,000* | ___ $250,000/$500,000 |
| X | $25,000/$50,000 | ___ $300,000/$300,000 |
| ___ | $50,000/$100,000 | ___ $500,000/$500,000 |
| ___ | $100,000/$300,000 | ___ |

*minimum limit

_____
Signature of First Named Insured

Policy Number   58C664126           Date  6/28/03

Agent    CHARLES W. GORDON, JR.      County

---

(Compl. Ex. E.)

3

## II. STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson*, 477 U.S. at 248-49.

In opposing summary judgment, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists

a genuine issue for trial." *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the underlying facts and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a fact-finder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. 242, 247-48 (1986).

### B. Applicable Law

Where a federal court's jurisdiction is based on diversity of citizenship, as it is here, a court determines which state's substantive law governs by applying the choice-of-law rules of the jurisdiction in which the district court sits, in this case, Pennsylvania. *Garcia v. Plaza Oldsmobile Ltd.*, 421 F.3d 216, 219 (3d Cir. 2005)

(citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941)).  There is some disagreement among Pennsylvania courts and federal courts applying Pennsylvania law as to which choice of law rule governs a contract dispute, including disputes over insurance contracts.  *Budtel Assoc., LP v. Continental Cas. Co.*, 915 A.2d 640, 643-44 (Pa. Super. Ct. 2006) (collecting cases).  In this case, however, the parties have relied principally on Pennsylvania law, and accordingly, to the extent that the law of a state other than Pennsylvania could control the resolution of the present motion, the issue has been waived by the parties.  *See Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1005 n. 1 (3d Cir. 1980).  Pennsylvania law shall apply.

In applying Pennsylvania law and in the absence of controlling authority from the Supreme Court of Pennsylvania, this Court must predict how the Supreme Court of Pennsylvania would resolve the questions posed in this case.  *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 236 (3d Cir. 2006).  Though not controlling, decisions from Pennsylvania's lower appellate courts are considered predictive, and in the absence of an indication otherwise, shall be accorded significant weight.  *Id.*

## III.   DISCUSSION

The interpretation of an insurance policy is a question of law for the court. *Kvaerner Metals Div. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006).  The court's primary goal in interpreting a policy is to ascertain the parties' intentions as manifested by the policy's terms.  *Id.*  When the language of the policy is clear and unambiguous, the court must give effect to that language.  *Id.*  When a provision in the policy is ambiguous, "the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage."  *Id.*  "Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Prudential Prop. & Cas. Ins. Co. v. Sartno*, 903 A.2d 1170, 1174 (Pa. 2006).

Nationwide argues that the UIM coverage authorization form unambiguously sets forth the limits of UIM coverage that the Brens selected and that these limits must therefore be enforced.  The Brens argue that the UIM coverage authorization form is ambiguous and misleading and therefore should be construed in their favor to effect higher limits.  The Court finds that the form is unambiguous and that the limits set forth therein must be enforced as written.

The Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL") requires that every motor vehicle registered in Pennsylvania be covered by "financial responsibility," meaning that the vehicle is covered by insurance that provides a minimum of $15,000 per person and $30,000 per accident of liability coverage. 75 Pa. Cons. Stat. §§ 1786, 1702. The MVFRL also requires that insurers issuing motor vehicle liability policies in Pennsylvania offer uninsured and underinsured motorist coverage equal to the limits of liability coverage. 75 Pa. Cons. Stat. § 1731(a); *see also Blood v. Old Guard Ins. Co.*, 934 A.2d 1218 (Pa. 2007) (quoting with approval *Nationwide Ins. Co. v. Resseguie*, 980 F.2d 226, 230 (3d Cir.1992)). The insured may request UIM coverage in amounts less than liability limits, but must do so in writing. 75 Pa. Cons. Stat. § 1734. The insured may also reject UIM coverage completely by signing a written waiver form. 75 Pa. Cons. Stat. § 1731(c). Thus, there is no minimum amount of UIM coverage required by law. *See* 75 Pa. Cons. Stat. § 1731(a) ("[p]urchase of ... underinsured motorist coverage[] is optional").

Nationwide argues that the UIM coverage authorization form completed by the Brens, and fully reproduced above, is a valid election of UIM coverage pursuant to § 1734 and unambiguously establishes the Brens' UIM limits. To constitute a valid request for specific limits of UIM coverage under § 1734, the

request must be in writing, the named insured must sign the writing, and the writing must include an express designation of the amount of UIM coverage requested. *Hartford Ins. Co. v. O'Mara*, 907 A.2d 589, 602-03 (Pa. Super. Ct. 2006) (citing *Lewis v. Erie Ins. Exchange*, 793 A.2d 143, 153 (2002)). The MVFRL does not require a § 1734 request to take any specific form or contain any specific language beyond these general requirements. *Id.* at 603. The UIM coverage authorization form at issue was signed by Joseph Bren and contains an express designation of his request for $25,000/$50,000 of UIM coverage. The form thus complies with § 1734 and effects a valid election of UIM coverage. This conclusion is confirmed by the fact that Nationwide's UIM coverage authorization form was approved by the Pennsylvania Department of Insurance.[2] (SMF ¶ 14.)

The Brens argue that the UIM coverage authorization form is misleading and ambiguous because it misstates Pennsylvania law. First, the Brens argue that the form incorrectly implies that the MVFRL requires UIM coverage by stating that UIM limits "[c]annot ... be less than Financial Responsibility Limits." Next the Brens argue that the form incorrectly implies that the MVFRL requires a minimum

---

[2] The Brens admit that the Pennsylvania Insurance Department approved Nationwide's form, but argue that several changes have been made to the form since it was approved. (*See* Pls.' Response to SMF ¶ 14.) These changes are immaterial to the instant motion. Moreover, regardless of the Insurance Department's approval, Nationwide's form complies with the requirements of § 1734.

9

amount of UIM coverage by noting, via an asterisk next to the $15,000/$30,000 amount, that this is the "minimum limit." The Brens contend that these misleading implications give insureds who, like the Brens, select coverage above this amount a false sense of security that they have selected appropriate coverage above the "minimum". The Brens' argument is unavailing.

Unlike a complete rejection of UIM coverage pursuant to § 1731, Pennsylvania courts have clearly held that § 1734 does not dictate the particular language that must be used to accomplish a valid reduction of UIM coverage limits.[3] *See, e.g.*, *O'Mara*, 907 A.2d at 603. Although perhaps not a model of clarity, Nationwide's UIM coverage authorization form meets the legal requirements of a valid election of UIM limits: (1) a writing (2) signed by the named insured (3) which includes an express designation of the specific amount of UIM coverage requested. That the Brens or the Court could conceive of a better form does not mean that Nationwide's form should be invalidated. *Id.* (holding "the language of the 'writing' does not violate the mandate of Section 1734 because the arbitrators could conceive of a better way to fashion the language").

The UIM coverage authorization form is not made ambiguous by the fact

---

[3] The Brens' reliance on *American International Insurance Co. v. Vaxmonsky* 916 A.2d 1106 (Pa. Super. Ct. 2006), which invalidated an UIM *rejection* form because it did not comply with the specific language dictated by § 1731, is thus misplaced.

that an asterisk marks the $15,000/$30,000 amount as the "minimum limit." This amount is, in fact, the "minimum limit" of UIM coverage that Nationwide will underwrite its insureds. (Def. Ex. P at 37-38.) As the Brens themselves stress, the MVFRL does not require an insurer to provide – or an insured to purchase – a specific amount of UIM, but merely requires an insurer to offer some UIM coverage up to the liability limit of the policy offered. Should an insured chose to purchase UIM coverage, Nationwide may offer to underwrite only a minimum limit of UIM coverage without violating the MVFRL. Similarly, the form is not ambiguous because it states that UIM limits "[c]annot ... be less than Financial Responsibility Limits." This phrase is true: the MVFRL does not require UIM coverage, and the insured's UIM limits cannot be less than this amount. Again, while this general form, likely intended for use in numerous states with different insurance requirements, could be better tailored to reflect Pennsylvania's requirements, this fact does not violate § 1734 or invalidate the election of lower UIM limits. *O'Mara*, 907 A.2d at 603. This conclusion is strongly supported by the fact that the Pennsylvania Department of Insurance approved the form with this phrase included. (SMF ¶ 14.)

Moreover, the Brens' argument fails because the alleged ambiguity that they identify is immaterial to their explicit election of UIM coverage. The Brens expressly chose UIM limits of $25,000/$50,000. They do not argue that they were misled into choosing the $15,000/$30,000 limit, nor do they contend that they were fooled into purchasing too much UIM coverage by the denotation of "minimum limit." In fact, the Brens' argument is just the opposite: that Nationwide's form suggests Pennsylvania requires a minimum amount of UIM coverage and that this suggestion somehow prevented them from purchasing UIM coverage *above* this minimum amount. No reasonable juror could accept this self-contradictory argument.

Even assuming *arguendo* that the form implies a statutorily required amount of UIM coverage, a reasonable insured can be presumed to select coverage based on his insurance needs, not the location of a checkbox on a form. The Brens do not dispute that they knowingly and intelligently selected $25,000/$50,000 in UIM coverage via the June 2003 UIM authorization form. (*See* Pls.' Opp. at 12.) The Brens also previously elected the same UIM limits on a 2002 UIM coverage authorization form. (Def.'s Ex. C, Ex. D at 15.) Between the 2002 election of these limits and the date of the accident, the Brens renewed their six-month term policy five times, each time after receiving declarations pages indicating the

selected $25,000/$50,000 limits of UIM coverage. (*See* Def.'s Ex D at 19 and Ex. H-G.) Over this time, the Brens continued to pay lower monthly premiums for this lower amount of coverage. (SMF ¶ 4(1).) The validity of the Brens election of $25,000/$50,000 limits of UIM coverage is confirmed by the fact that they knowingly chose this limit and continued to renew and pay for a policy providing this amount of UIM coverage. *See State Farm Mut. Auto. Ins. Co. v. Gillespie*, 152 Fed. Appx. 201, 204 (3d Cir. 2005) (collecting cases).[4]

## IV.  CONCLUSION

Although the circumstances of Joseph Bren's accident are regrettably tragic, the UIM coverage authorization form at issue fulfills the requirements of § 1734 to effect a valid election of UIM coverage and unambiguously sets forth the UIM limits of the Brens' policy. For these reasons, Nationwide's motion for summary judgment will be granted. An appropriate order shall issue.

---

[4] The Brens attempt to distinguish this line of cases by noting that *Gillespie* and other cases with the same holding relied on by Nationwide are "unpublished" or "not precedential" opinions. Although unpublished opinions are not binding precedent, citation to such opinions is not prohibited, *In re Grand Jury Investigation*, 445 F.3d 266, 276 (3d Cir.2006), and unpublished opinions may still be persuasive authority, *see Kolkevich v. Attorney Gen. of U.S.*, 501 F.3d 323, 331 n.5 (3d Cir. 2007); *City of Newark v. U.S. Dep't of Labor*, 2 F.3d 31, 33 n.3 (3d Cir.1993). *See also* Fed. R. App. P. 32.1 (prohibiting courts from restricting citation to unpublished opinions issued on or after January 1, 2007). In this instance, the Court finds the reasoning of *Gillespie* and the cases cited therein highly persuasive.